1  Abran E. Vigil
   Nevada Bar No. 7548
2  BALLARD SPAHR LLP
   1980 Festival Plaza Drive, Suite 900
3  Las Vegas, Nevada 89135
   Telephone: (702) 471-7000
4  Facsimile: (702) 471-7070
   E-Mail:  vigila@ballardspahr.com
5
   Paul J. Safier, Esq. (*will comply with LR*
6  *IA 11-2 within 14 days*)
   1735 Market Street, 51st Floor
7  Philadelphia, Pennsylvania19103
   Telephone: (215) 988-9146
8  E-Mail:  safierp@ballardspahr.com
9  *Attorneys for Plaintiffs*
10
11                    UNITED STATES DISTRICT COURT
12                         DISTRICT OF NEVADA
13  DIAMOND RESORTS CORPORATION, a        Case No.:
    Maryland corporation; DIAMOND
14  RESORTS HOLDINGS, LLC, a Nevada
    limited liability company; and DIAMOND
15  RESORTS INTERNATIONAL, INC., a
    Delaware corporation,
16                                          **COMPLAINT FOR DAMAGES AND
               Plaintiffs,                   INJUNCTIVE RELIEF**
17
    vs.
18
    KYLE BROWN, an individual; MARTIN
19  BROWN, an individual; EXCHANGE
    POINTS CLUB, LLC, a Florida and
20  Missouri limited liability company;
    PREMIER REWARDS LLC, a Missouri
21  limited liability company; VMG RESORTS
    LLC, a Missouri limited liability company;
22  VACATION MANAGEMENT GROUP,
    LLC, a Missouri limited liability company;
23  and OWNER EXTRAS LLC, a Missouri
    limited liability company,
24
               Defendants.
25
26
27
28

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

For their complaint, Plaintiffs Diamond Resorts Corporation, Diamond Resorts Holdings, LLC, and Diamond Resorts International, Inc. (collectively, "Diamond"), through their attorneys Ballard Spahr, LLP, allege as follows:

## NATURE OF ACTION

1.     This is an action for trademark infringement, false designation of origin, and false advertising under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a)(1), as well as for deceptive trade practices under Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598, 598A et seq, and common law conversion.

2.     Diamond is a collection of interrelated businesses that market and sell timeshare interests, manage resorts and multi-resort trusts, and operate points-based vacation clubs.  Diamond is a global leader in the hospitality industry and one of the largest independent-branded vacation ownership businesses in the country.  It is the owner of multiple marks in connection with those activities, including, as relevant here, the mark "DIAMOND RESORTS®," and the mark "THE CLUB®."

3.     In tandem with its hospitality and management services, Diamond's core business is the marketing and sale of timeshare interests to persons who want access to a vacation-ownership program ("Timeshare Program") that provides flexibility in terms of the location, season and duration of their vacation.  The purchasers of those timeshare interests ("Collection Members" or "Members") acquire, through their purchase, "Points," which act as currency that is exchangeable for occupancy rights in accommodations at resorts within their Timeshare Program and at other Diamond-affiliated resorts (collectively, the "Resorts").

4.     Defendants Kyle Brown and Martin Brown are, upon information and belief, the sole principals behind the five business-entity Defendants: Exchange Points LLC, PR Rewards LLC, VMG Resorts LLC, Vacation Management Group LLC, and Owners Extras, LLC (collectively, "Defendants").  The Browns' businesses are related to a particular segment of the timeshare industry called "exchange networks," which provide a mechanism for timeshare owners to use their timeshare

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

interests for something other than vacation stays at accommodations within their own timeshare program. *Some* exchange networks run perfectly legitimate businesses, which, with the cooperation and authorization of the timeshare companies, permit timeshare owners to reserve accommodations outside of their particular timeshare program. The Browns' businesses, however, are *not* legitimate.

5.  On the contrary, Defendants have engaged in deceptive and illicit schemes designed to profit at the expense of Diamond and Collection Members.  As explained in detail below, those schemes have involved an ongoing campaign of telephonic advertisements, in which, making use of Diamond's marks and other deceptive means to falsely suggest affiliation with Diamond, Defendants have attempted to trick Collection Members into turning over control of their Points to Defendants in direct violation of the governing documents for their Timeshare Program.   Defendants are then using Members' Points to reserve Resort accommodations for *their* customers, employing Diamond's marks and other misleading representations in order to falsely hold themselves out as authorized wholesale distributors of vacation stays at the Resorts.  And, to make matters worse, Defendants are charging Collection Members a substantial up-front fee for the "service" of renting out their Points on their behalf, even though Defendants have no authorization to rent out anyone's Points, and, upon information and belief, Defendants end up returning little, if any, of the proceeds from those unauthorized transactions back to the Collection Member.

6.  Defendants' willful and dishonest schemes have caused, and are continuing to cause, substantial and immediate harm to Diamond.   First, by misappropriating Diamond's marks to falsely suggest affiliation with Diamond, and making false representations to Collection Members about what they can do with their Points, Defendants are irreparably disrupting Diamond's relationship with Collection Members, who are being scammed out of money by a company they believe to be affiliated with Diamond, as well as fundamentally misled about the nature of

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

3

their Timeshare Program.  Second, by using Members' Points to reserve Resort accommodations for *their* customers, Defendants are diverting vacationers away from Diamond, who otherwise could gain access to such accommodations only through Diamond.  Third, Diamond has had to expend significant resources investigating Defendants' schemes, as well as attempting to counteract the effects of those schemes on Diamond's business reputation.

7.     Thus, Diamond seeks relief from this Court in the form of an accounting, monetary damages consisting of disgorgement of all of Defendants' ill-gotten gains, attorneys' fees, and – most importantly – preliminary and permanent injunctive relief barring Defendants from continuing to carry out their schemes.

## PARTIES, JURISDICTION AND VENUE

### A.     The Plaintiffs

8.     Plaintiff Diamond Resorts Corporation ("DRC") is a Maryland corporation with its principal place of business located at 10600 West Charleston Boulevard, Las Vegas, Nevada 89135.  DRC is the parent company and sole owner of all of Diamond's "development entities," which are the business entities that enter into contracts with Collection Members for the purchase and sale of Points.   Because DRC is the 100% owner of all of Diamond's development entities, it ultimately subsumes all the losses incurred by its underlying development entities, including, as relevant here, all losses caused by Defendants' scheme.

9.     Plaintiff Diamond Resorts Holdings, LLC ("DRH") is a limited liability company organized under the laws of the State of Nevada with its principal place of business located at 10600 West Charleston Boulevard, Las Vegas, Nevada 89135.  It is the parent company of DRC, and the owner of all of the Diamond marks at issue in this lawsuit.

10.     Plaintiff Diamond Resorts International, Inc. ("DRI") is a Delaware corporation with its principal place of business located at 10600 West Charleston

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

Boulevard, Las Vegas, Nevada 89135.  DRI is the parent company and sole owner of DRH.

**B.**    **The Defendants**

11.    Defendant Kyle Brown is an individual who resides in the State of Missouri.  Upon information and belief, he, along with Defendant Martin Brown, are the architects behind the business-entity Defendants, and the illicit schemes described herein.

12.    Defendant Martin Brown is an individual who resides in the State of Missouri.  Upon information and belief, he, along with Defendant Kyle Brown, are the architects behind the business-entity Defendants, and the illicit schemes described herein.

13.    Defendant Exchange Points Commission, LLC ("Exchange Points") is registered as a limited liability company in both the State of Florida and the State of Missouri.  Its Florida registration lists its address as 6965 Piazza Grande Avenue, #218, Orlando, Florida 32835, and identifies Kyle Brown as its manager.  Attached hereto as **Exhibit 1** is a true and correct copy of Exchange Points' Florida Annual Report for 2018.  Exchange Points' Missouri registration lists its principal place of business as 22 Gravois Station, House Springs, Missouri 63051, and identifies Kyle Brown as its organizer.  Attached hereto as **Exhibit 2** is a true and correct copy of Exchange Points' Missouri Articles of Organization.

14.    Defendant Premier Rewards LLC a/k/a PR Rewards ("PR Rewards") is a Missouri limited liability company.  Like Exchange Points, it lists its principal place of business as being at 22 Gravois Station, House Springs, Missouri 663051.  Upon information and belief, its only two members are Defendants Martin Brown and Kyle Brown.  The Articles of Organization for PR Rewards list its email address as "exchangepointsclub@gmail.com," which is the same email address listed for Exchange Points in its Articles of Organization.  Attached hereto as **Exhibit 3** is a true and correct copy of Premier Rewards' Articles of Organization.  PR Rewards

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

1  appears to have recently changed its name to Member Perks LLC, but the publicly
2  available organizational documents indicate that it remains the same legal entity.

3  15.  Defendant VMG Resorts LLC ("VMG Resorts") is a Missouri limited
4  liability company with its principal place of business located at 10650 Keystone
5  Drive, Blackwell, Missouri 63626.  Upon information and belief, its sole member is
6  Defendant Martin Brown.  Attached hereto as **Exhibit 4** is a true and correct copy of
7  VMG Resorts' Articles of Organization.

8  16.  Defendant Vacation Management Group, LLC ("Vacation Management
9  Group") is a Missouri limited liability company.  Like Exchange Points and PR
10  Rewards, it lists its principal place of business as 22 Gravois Station, House Springs,
11  Missouri 663051.  Vacation Management Group is the parent company of both PR
12  Rewards and VMG Resorts.  Upon information and belief, Vacation Management
13  Group's sole member is Defendant Martin Brown.  Attached hereto as **Exhibit 5** is a
14  true and correct copy of Vacation Management Group's Statement of Change of
15  Business Office Address.

16  17.  Defendant Owner Extras LLC ("Owner Extras") is a Missouri limited
17  liability company.  Like Exchange Points, PR Rewards, and Vacation Management
18  Group, it lists its principal place of business as 22 Gravois Station, House Springs,
19  Missouri 663051.  Upon information and belief, Owners Extras' sole member is Kyle
20  Brown.  The Articles of Organization for Owners Extras list its email address as
21  being "info@vmgresorts.com," which is the same email address listed for VMG
22  Resorts in its Articles of Organization.  Attached hereto as **Exhibit 6** is a true and
23  correct copy of Owner Extras' Articles of Organization.

24  **C.  Jurisdiction and Venue**

25  18.  This Court has subject matter jurisdiction over this matter under 28
26  U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs
27  and Defendants and the amount in controversy exceeds $75,000.

28

6

19. Alternatively, this Court has subject matter jurisdiction over the claims grounded in the Lanham Act under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a), and can exercise subject matter jurisdiction over the Nevada state law claims pursuant to 28 U.S.C. § 1367(a), as those claims are so related to the claims asserted under federal law as to form part of the same case or controversy.

20. This Court may properly exercise personal jurisdiction over Defendants because this action arises out of Defendants' purposeful contacts with the State of Nevada, including their (a) directing infringing advertising and promotional communications at Nevada residents, (b) engaging in schemes designed to divert sales from Plaintiffs, which are businesses located and/or incorporated in Nevada, (c) holding themselves out as affiliated with Plaintiffs, which are businesses located and/or incorporated in Nevada, (d) wrongfully converting Plaintiffs' and their affiliates' exclusive right to engage in the commercial rental of Resort accommodations through the use of Points under the governing documents for the Collections, which are businesses located and/or incorporated in Nevada, and (e) engaging in schemes executed in significant part by deceptively gaining access to Collection Members' online owner portal accounts, which are hosted and managed by a Diamond affiliate in Nevada ("Member Portal Accounts").

21. Venue is proper in this Court pursuant 28 U.S.C. § 1391(b)(2) because, as described above and below, a substantial part of the events giving rise to Diamond's claims took place in this District.

## FACTS COMMON TO ALL COUNTS

### A. The Diamond Marks

22. Since its founding in 1996, Diamond has grown into one of the largest and well-known hospitality companies in the world, with more than 109 properties that are part of the Collections (as defined below), managed by Diamond affiliates, or otherwise Diamond-branded, and 268 affiliated resorts and hotels throughout the continental United States and Hawaii, Canada, Mexico, the Caribbean, Europe, Asia,

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

7

Australia, and Africa.  Presently, Diamond provides hospitality services to more than 400,000 Members worldwide.

23.     A crucial part of Diamond's success has been building up the Diamond brand.   During its more than two decades of existence, Diamond has invested considerable time and expense in marketing its brand, including its associated marks, to establish wide-spread recognition of, and goodwill for, the Diamond brand among the consuming public, including Collection Members.

24.     Diamond's timeshare and hospitality programs are all marketed under Diamond's marks, which DRI owns through its wholly owned subsidiary DRH.  These include various marks incorporating the word "Diamond®," as well as the mark "The Club®," which, as explained below, Diamond uses to denote certain specific Member exchange programs and services that it offers.

25.     As relevant here, Diamond's marks (the "Diamond Marks") include the following federally registered marks:

| Registration Number | Trademark | Registration Date | Description of Good and/or Services |
|---|---|---|---|
| 2,411,329 | DIAMOND RESORTS INTERNATIONAL | December 5, 2000 | IC 042: Hotel Services. |
| 2,432,190 | DIAMOND RESORTS INTERNATIONAL | February 27, 2001 | IC 036: Real estate time sharing services. |
| 3,746,815 | DIAMOND RESORTS | February 9, 2010 | IC 036: real estate equity sharing, namely, managing and arranging for co-ownership of real estate; real estate time-sharing; vacation real estate time share exchange services; vacation real estate time-sharing. |

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

8

| Registration Number | Trademark | Registration Date | Description of Good and/or Services |
|---|---|---|---|
| 4,361,959 | DIAMOND RESORTS INTERNATIONAL | July 2, 2013 | IC 035: Real estate sales management; managing and operating hotels of others. |
| 4,805,164 | DIAMOND PLUS POINTS | September 1, 2015 | IC 035: Incentive programs for credit card users, namely, providing gift cards, merchandise, and travel awards for credit card use as part of a customer loyalty program.<br><br>IC 036: Credit card services; incentive programs for credit card users, namely, providing cash and rebates for credit card use as part of a customer loyalty program. |
| 3,566,128 | THE CLUB | January 20, 2009<br><br>**Date of First Use:**<br>September 30, 2007 | IC 36: Real estate equity sharing, namely, managing and arranging for co-ownership of real estate; Real estate services, namely, rental of short-term furnished apartments; Real estate time-sharing; Vacation real estate time share exchange services; Vacation real estate time-sharing; Vacation real estate timeshare |

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

| Registration Number | Trademark | Registration Date | Description of Good and/or Services |
|---|---|---|---|
| | | | services. |

True and correct copies of each of the foregoing registrations are attached hereto as **Exhibits 7-12.**

26.    The Diamond Marks are distinctive and signify to the consuming public, including Collection Members, that products and services that come from Diamond are reliable, trustworthy, and of high quality.

27.    Diamond uses the Diamond Marks in its advertising and promotional materials, including its website, its brochures and catalogues, and its print and online advertising.   In addition, Diamond uses the Diamond Marks in its communications with Collection Members to signal that the communication is coming from Diamond.

### B.    The Timeshare Programs

28.    Diamond's operations consist of two interrelated businesses: (a) timeshare interest sales and financing, which includes the marketing and sale of timeshare interests and consumer financing for Collection Members; and (b) hospitality and management services, which includes management of resort properties and trusts, operation of vacation ownership clubs and resort amenities, and the provision of other hospitality and management services.

29.    A Collection Member typically receives an annual or bi-annual allotment of Points in exchange for its payment of the purchase price.[1]  That Member is then able to use their Points to reserve accommodations at the Resorts or to

---

[1] Diamond also offers non-timeshare trial packages called "Samplers," which do not come with renewable Points, but rather one-time use points that expire after a set period.

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

reserve accommodations or book other travel-related benefits outside of their Collection if the Collection Member is a member of an exchange program.

30. Members purchase Points in specific "Collections," each of which constitutes an independent Timeshare Program that includes multiple resort locations. For instance, a Member could purchase Points within the Diamond Resorts U.S. Collection, in which case that Member would be able to use their Points to reserve vacation stays at Resorts within that Collection, which are located throughout the continental United States, as well as. St. Maarten.

31. Within each Timeshare Program, Points are personal to the Collection Member. That is, Collection Members use their Points through their particular membership accounts, usually reserving their vacation stays online through their Member Portal Account. As part of that system, Collection Members are not permitted to employ their Points for a commercial – rather than personal – use. Collection Members can, however, permit their "guests" – *i.e.*, friends and family – to enjoy vacation stays at the Resorts via their Points, provided that the Collection Member personally makes the reservation with his or her own Points, and then provides the names of the guests who will be using the reservation.

32. As part of their membership, each Collection Member is required to pay annual maintenance fees. These fees cover operating expenses and capital reserves for the Members' Collection, including, but not limited to, operation of the reservation system; Member publications; independent exchange program affiliation fees; invoicing and collecting maintenance fees; providing administrative services; assessments levied by owners associations for Resorts within the Collection; maintenance, repair modification, alteration, redecoration or replacement of each Collection accommodations, the furnishings therein, and the common areas of Resorts within the Collection; insurance coverage; capital contributions for reserves; domestic services, including cleaning and maid service; noticing and conducting association meetings; and obtaining management, accounting, legal, or other

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

1   professional services.   The fees are paid directly to the non-profit members

2   association for that Member's Collection.

3       33.    In addition, Members have access to "exchange networks."  For instance,

4   Diamond has an internal exchange network called "The Club®," a name that

5   Diamond has trademarked for that purpose.   That program allows Collection

6   Members to exchange their Points to reserve accommodations outside of their

7   Collection, as well as for other travel-related benefits, such as cruises.

8       34.    There are also independent exchange companies outside of Diamond,

9   which allow timeshare owners to trade their timeshare interests within their

10   timeshare program for rights to reserve accommodations within other timeshare

11   programs.  The two most prominent independent exchange companies are Interval

12   International ("II") and Resort Condominiums International ("RCI").  II is currently

13   an authorized exchange network for the Diamond Collections through an affiliation

14   agreement between The Club® and II.   That means that Collection

15   Members participating in The Club® are able to exchange their Points through II for

16   rights to reserve accommodations in other cooperating timeshare programs.  RCI is

17   not currently an authorized exchange network for Collection Members, but it is for

18   other timeshare programs, and is well known throughout the industry.

19       35.    Finally, when Diamond has access to unsold or otherwise unused

20   inventory at the Resorts, it will attempt to rent such inventory to persons who are

21   not Collection Members or use such inventory for other sales and marketing purposes

22   Collection Members may also rent one-time-use Points from Diamond for purposes of

23   specific vacation plans in any given year.

24       36.    Thus, to be permitted to stay at accommodations that are part of a

25   Collection, a person must be one of the following: (a) a Collection Member (or a

26   permitted guest or family member of a Collection Member), (b) an owner of a

27   different timeshare interest who reserved accommodations at a Resort through an

28

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

1  exchange   program,   or   (c)   someone   who   rented   accommodations   directly   from
2  Diamond.

3        **C.**    **Defendants' Unlawful Schemes**

4         37.    Diamond has recently discovered that Defendants have been engaged in
5  various schemes in which they sell and facilitate access to accommodations within
6  the Resorts to their customers, even though Defendants are not, in fact, authorized to
7  do so, and the persons to whom they are selling and facilitating this access are not
8  permitted users of such Resort accommodations.[2]

9         38.    Because the principal means of reserving stays at the Resorts – Points –
10 are in the hands of Collection Members, who are not permitted to rent those Points
11 for commercial purposes, Defendants' schemes hinge on their ability to trick
12 Collection Members into giving Defendants control of their Points.  Thus, Defendants
13 have engaged in a campaign of misleading telephonic advertisements to Collection
14 Members designed to obtain control of their Points.

15        39.    Although, as set forth below, the details of those sales calls vary, the
16 basic structure of the sales pitch remains the same.  During the call, a representative
17 from one of the Defendants purports to be calling *about* the Member's Collection
18 account with Diamond.  In some of the instances of which Diamond presently aware,
19 the caller has explicitly and falsely represented that he or she is affiliated with
20 "Diamond" or "The Club" (which is operated by a Diamond affiliate) or the equity
21 sponsors of Diamond.  In other such instances, the caller has falsely represented that
22 he or she is affiliated with "II" or "RCI," or made some other misleading
23 representation.   In all such known instances, however, the caller has falsely
24 represented himself or herself as someone in rightful possession of insider knowledge
25 of the details of the Collection Member's account (and, in many cases, insider

26

27       [2] Defendants also appear to be selling and facilitating occupancy at vacation
    properties associated with timeshare companies other than Diamond.
28

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

knowledge about purported *problems* with the account), as well as someone who can make representations to Collection Members about what they can and cannot do with their Points.

40. After falsely representing to the Collection Member that he or she is affiliated with Diamond (or else affiliated with an entity, such as II or RCI, which conceivably *might* be authorized to serve as a legitimate exchange company for the deposit of Points), the caller then proposes the following transaction:  the caller's company will rent the Member's Points, in exchange for an up-front broker's fee, and then, when the Member receives its portion of the proceeds from those transactions, it can then apply the proceeds to its maintenance fees.  To complete the proposed transaction, the Member is required not only to pay the up-front fee, but also to give over the password and other log-in details to his or her Member Portal Account, permitting Defendants to use that account to reserve accommodations at the Resorts on behalf of *their* customers.

41. Thus, Defendants' schemes have two parts.  First, Defendants have gained access to Resort accommodations by falsely representing themselves to Collection Members as authorized to rent their Points on their behalf, and advertising to them programs in which Defendants will rent their Points for a fee. Second, Defendants are providing their customers with access to Resort accommodations, falsely holding themselves out as authorized wholesalers of such accommodations, and using access to the Member Portal Account and control of their Points to make reservations they are providing to their customers.

42. As explained below, the first part of the scheme appears to be carried out primarily by Exchange Points, PR Reward, and Owner's Extras, while the second part of the scheme is carried out by VMG Resorts and Vacation Management Group.

43. On information and belief, all of the conduct described herein by those entities described herein has been carried out at the personal direction of Defendants Kyle Brown and Martin Brown.

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

     i.  *Defendants' Websites*

  44. Though, as described below, much of Defendants' schemes have involved telephone solicitations of Collection Members that Defendants no doubt intended to remain secret, some of it has been conducted out in the open on their websites.

  45. For instance, until it was recently changed in response to a cease-and-desist letter from Diamond, the promotional website for Exchange Points laid out both parts of the company's scheme.  The website included a page describing what it calls its "Maintenance Reimbursement Program" for timeshare owners.  That page stated that: "For Club owners that already have Points or can't use them, enrolling as a Club member will save you more than ever. As long as you are an active Club member, you can deposit any of your Points that you will not use and the Club will pay you for your maintenance fees on those points!"  In addition, page used Diamond's marks to falsely imply that Exchange Points is an authorized depository for Points, referencing a "Diamond VIP Member Payout" and a program called "Club Diamond" that "price matches your original maintenance fees."  A true and correct screen shot of that page of Exchange Points' webpage is attached hereto as **Exhibit 13**.

  46. The other end of the scheme, where Exchange Points sells and facilitates access to Resort accommodations to *its* customers, was made clear on a separate page of the Exchange Points website labeled "Exchange Points Club | Getting Started."  That page stated that "Exchange Points Club delivers this exclusive Club membership package, where you are able to get the Points, travel deals, member benefits, and exceptional prices without having to own vacation property. *By enrolling in a Club membership, you get all of the benefits, discounts and inventory available to timeshare owners without having to own a timeshare.*"  A true and correct screen shot of that page of Exchange Points' webpage is attached hereto as **Exhibit 14**.  The "FAQ" page of the Exchange Points website also made this clear, stating that it "is able to provide customers these Points packages and benefits

without all of the costs and obligations that come from buying a timeshare." A true and correct screen shot of that page of Exchange Points' webpage is attached hereto as **Exhibit 15**.

47. The website for PR Rewards also advertised a program for renting Points, until it was likewise changed in response to Diamond's cease-and-desist letter. Its home page prominently featured the "Diamond Resorts" logo, and touted that it is "currently managing" roughly 1.8 million Points. The website further stated that: "We guarantee that your points/weeks will be rented and you will be paid for your points/weeks in a timely manner." In addition, the website offered three tiers for Collection Members: "Silver," where the Member supposedly gets "50%" of all rental proceeds, "Gold," where the Member supposedly gets "55%" of all rental proceeds, and "Platinum," where the Member supposedly gets "60%" of all rental proceeds. A true and correct screen shot of the PR Rewards homepage is attached hereto as **Exhibit 16**.

48. While PR Rewards does not itself appear to be selling and facilitating access to accommodations within the Resorts, that role is being performed by VMG Resorts through Vacation Management Group. Vacation Management Group is the owner of both PR Rewards and VMG Resorts, as indicated on its website, a true and correct screen shot of which is attached hereto as **Exhibit 17**. VMG Resorts holds itself out as a "vacation resort wholesaler offering member exclusive resorts to the general public at a fraction of the cost," as indicated on its website, a true and correct screen shot of which is attached hereto as **Exhibit 18**.

49. Many of the accommodations that are offered through the VMG Resorts website are part of the Resorts. For instance, the below images are of Resorts included in listings on the VMG Resorts website:

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070





22        ii.    *Defendants' Telephonic Advertisements*

23        50.    The part of Defendants' scheme where they have obtained control of

24 Collection Members' Points has been primarily conducted through misleading

25 telephonic advertisements directed at Collection Members.

26        51.    The bulk of the telephone solicitations of which Diamond is presently

27 aware have come from the number "844-385-0276," which Exchange Points lists as

28

its phone number on its website.  Some Collection Members have, however, received calls originating from Owners Extras and PR Rewards.

52.     In these telephone solicitations, Defendants have attempted to enroll Collection Members in two programs: "Maintenance Fee Reimbursement" and "Club Elite" programs.  Both of those programs involve the Member (a) paying an up-front membership fee, and (b) depositing his or her Points with Defendants in exchange for a promise of payment to be applied to that Member's maintenance fees.

53.     Attached hereto as **Exhibit 19** is a true and correct copy of a form Agreement that has been furnished to multiple Collection Members, with the specific identifying information redacted.  As relevant here, the agreement provides as follows:

    a.     While Exchange Points "will handle all details involved with the rentals, including but not limited to; advertising, receiving incoming calls and emails, checking availability, [and] pricing reservations," the Collection Member's role is "*simply [to] provide the required points and guest certificates for the reservations.*" In other words, the Collection Members who enter into this agreement are required to supply Exchange Points with not only access to their Points, but also "guest certificates" to permit the persons Exchange Points uses the Points to make reservations for to check-in at the Resort.

    b.     In addition, the agreement forbids the participating Collection Member from cancelling a reservation that Exchange Points makes through the Member's account, and also requires the Member to notify Exchange Points if the Member gets into a dispute with Diamond that could lead to that Member losing access to his or her account.  In particular, the agreement states that "if we are locked out of your account due to non-payment or dispute with Diamond, this agreement will be null and void, and owner could be liable for damages on lost guest reservations.  *Always notify us in advance of any dispute with Diamond, so we can move our reservations out of your account.*"

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

18

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

    c.    The agreement also requires the Member to give Exchange Points control of his or her Member Portal Account, stating: "*Upon payment of the sums set forth above to Owner, the Exchange Points Club shall have the right to access Owner's Account within the reservation/points system maintained by Diamond for the purpose of making reservations and rentals, communicating with Diamond and otherwise transacting all business related to the Points as the Owner would.*"

    d.    The agreement requires the participating Collection Member to pay Exchange Points $1,495 in order to enroll in the "Maintenance Fee Reimbursement" program.

    e.    Finally, the agreement states that "Club member understands that the Maintenance Reimbursement is handled solely by Exchange Points Club. **NOT AN RCI/Diamond PRODUCT**." That is the only indication Exchange Points provides that it is not affiliated with either Diamond or RCI. Up to that point in the sales transaction, Exchange Points leads the Collection Members to believe that the programs being offered are sponsored by, or otherwise affiliated with, Diamond.

54.    Though the sales calls Collection Members have received from Defendants have all centered on a proposal for reimbursement for the Members' Points, they have varied in *who* the caller has claimed to be affiliated with. Collection Members have received calls purporting to be coming from (a) "Diamond," (b) "Diamond Resorts," (c) "Member Services with Diamond Resorts," (d) "The Club," (e) "Club Services regarding your Diamond Points account," (f) "Diamond's Travel Services Department," (g) "Owner's Extras for Diamond," (h) "Interval International," (i) "RCI," (j) "RCI Points," and (k) various entities supposedly affiliated with Diamond's equity sponsors. In one instance, a Collection Member was contacted by someone at the Exchange Points number purporting to be from "RCI Services," who later connected her with someone who described himself as her "Diamond Counselor," and falsely explained that the programs he was offering were new to Diamond and had come about as a result of changes in Diamond's ownership

19

structure.  *All* of those representations of affiliation with an entity other than Exchange Points were false.

55.     In other sales calls to Collection Members, Defendants' salespeople have implied that the caller was not only affiliated with Diamond, but calling about a specific problem with that Collection Member's account.  Thus, multiple Members have received such calls purporting to be from "The Club" or "RCI" in which the caller has claimed to be calling about an "issue" with the Member's account, and, in particular, the fact that the Member has not been using all of his or her Points.  And, multiple Collection Members have been left official-sounding voicemail messages from someone at the Exchange Points number, which have stated: "This is [name] from Club Services calling regarding your Points account.  We have a couple of notices here."

56.     The purpose of these false representations is to confuse the Collection Member into believing that the proposal to rent the Member's Points for a fee is coming from and/or authorized by Diamond, and is, accordingly, permissible under the terms of Diamond's agreements with Collection Members and the governing documents for the Member's Collection.

57.     Collection Members who entered into agreements with Defendants have received notices indicating that their Points have been used to make reservations for non-Collection Members.  These notices have been coming from Defendant VMG Resorts, even though the sales calls have all been coming from Exchange Points, PR Rewards, or Owners' Extras.  In fact, one Collection Member was provided copies of the contract the Member eventually signed through an online portal hosted by the website for Defendant VMG Resorts (specifically, at the URL https://www.vmgportal.com/vmg-contracts/epc-diam.php).

58.     Upon information and belief, the solicitations described above represent only a small percentage of the actual solicitations made by that company to Collection Members.  Diamond only learns about such solicitations when such

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

Members come to Diamond with their concerns, which will only be a small subset of those actually contacted.

59.    Upon information and belief, most, if not all, of the Collection Members who have paid Defendants upfront fees have received no proceeds from the purported rental of their Points.

60.    Upon information and belief, Defendants are privy to unauthorized inside information about Collection Members and are using that information to target members who have large reserves of unused Points.

**D.    Injuries to Diamond**

61.    Defendants' conduct has caused, and is causing, direct and immediate harm to Diamond.  This harm has taken multiple forms.

62.    For instance, Defendants' conduct is causing irreparable harm to Diamond's relationship with Collection Members.  Collection Members are being led to believe that the programs Defendants are trying to get them to enroll in for a hefty fee are coming from, or at least affiliated with, Diamond.  When those programs do not work out as promised – and, in particular, when the Collection Member does not get its up-front payment returned, let alone the profits promised – that harms the goodwill Diamond has built up with Collection Members.  In addition, Defendants' representations that the transactions they are proposing to Collection Members are authorized and permissible are undermining Diamond's ability to manage the Collections.

63.    In addition, Defendants' unauthorized commercial rental of Resort accommodations is diverting vacationers from Diamond to Defendants.  The persons renting accommodations within the Resorts through Defendants could otherwise only

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

1  participate in such a vacation stay either by (a) purchasing Points, or (b) renting the

2  accommodations from Diamond.[3]

3      64.    Finally, Defendants' conduct has required Diamond to expend

4  significant resources uncovering their schemes and attempting to undo the damage

5  they are causing to Diamond's relationship with the Collection Members.

6      **D.**    <u>Diamond's Attempts to Resolve the Issues</u>

7      65.    On January 4, 2019, Diamond, through its undersigned counsel, sent a

8  cease-and-desist letter to Defendants Kyle Brown and Martin Brown regarding the

9  conduct described herein.  A true and correct copy of that correspondence is attached

10 hereto as **Exhibit 20**.  In that letter, Diamond asked that Defendants cease all

11 infringing activity and provide a thorough accounting of their activities with regard

12 both to Collection Members and selling access to the Resorts.

13     66.    Shortly thereafter, Defendant Kyle Brown reached out to undersigned

14 counsel.  Defendant Kyle Brown represented that Defendant Exchange Points was no

15 longer an ongoing business.  At the time this representation was made, Exchange

16 Points still had an active website that advertised affiliation with Diamond and was

17 listed as an active business in both Missouri and Florida.  (Later the references to

18 Diamond on the Exchange Points website were removed.)

19     67.    In discussions with undersigned counsel, Defendant Kyle Brown further

20 represented that his businesses had stopped actively soliciting Diamond's Collection

21 Members for the use of their Points, explaining that they no longer considered that

22 line of business to be profitable.  No proof was furnished to support that

23 representation.  In fact, Diamond has continued, as of the date of this filing, to

24 receive reports from Collection Members about the conduct described herein.

25

26 _____

27     [3] Because the persons renting the Resort accommodations through Defendants are not timeshare owners, they would not be able to make reservations through an exchange company such as II.

28

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

68.     In addition, Defendant Kyle Brown pointedly refused to direct his businesses to stop engaging in the second part of the schemes described herein – the use of Member Portal Accounts to book stays at resorts for Defendants' customers. While Defendant Kyle Brown acknowledged that his businesses had no right to access Diamond's internal booking system through Collection Members' accounts or Member Portal Accounts, he said the fault for that rested exclusively with the Collection Members themselves, whom he accused of falsely representing that they were permitted to provide Defendants with such access.  As of this writing, the website for Defendant VMG Resorts continues to display images of Resorts and promote access to those Resorts through VMG Resorts.

69.     Finally, Defendant Brown refused Diamond's demand that he identify (a) the Collection Members who provided his businesses with access to their Points, (b) the dates and locations of every vacation stay at a Resort that his businesses facilitated or received compensation for facilitating, or (c) the information he and/or his businesses acquired about Collection Members' accounts and Member Portal Accounts and how they acquired it.

70.     On information and belief, the schemes described herein are still being enacted, notwithstanding any representations that have been made.

## COUNT I
## (Trademark Infringement– 15 U.S.C. §1114)

71.     Diamond repeats and realleges the allegations set forth in Paragraphs 1 through 70 above as if set forth fully herein.

72.     Diamond owns the exclusive rights to the "Diamond Resorts" name, as well as all of the Diamond Marks listed above.  At no time did Diamond authorize Defendants to use any of Diamond's marks.

73.     Notwithstanding Diamond's well-known and prior common law and statutory rights in the Diamond Marks, Defendants have, with actual and constructive notice of those rights, used those marks in interstate commerce in

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

conjunction with both (a) their marketing of their various commercial rental programs for Collection Members' Points, and (b) their marketing and sale of access to the Resorts.

74. Defendants' use of the Diamond Marks without the authorization of Diamond is not only likely to deceive and cause confusion among those targeted by the deceptive sales communications, but actually has caused such confusion. In particular, Collection Members have been deceived by Defendants' use of the Diamond Marks into believing that the telephone solicitations they have received from Defendants are coming from Diamond itself, or else an entity affiliated with Diamond. In addition, the consumers who have reserved accommodations at the Resorts through Defendants have been deceived by Defendants' use of the Diamond Marks into believing that Defendants are authorized wholesale distributors of vacation stays at the Resorts.

75. Defendants' conduct has caused, and, if not enjoined by this Court, will continue to cause, irreparable harm to Diamond in that it is undermining Diamond's relationship to the Collection Members and causing Diamond to lose control of its brand.

76. Defendants' conduct has caused, and, if not stopped, will continue to cause, monetary injury to Diamond in the form of both the diversion of business from Diamond to Defendants, and the taking on of the costs of investigating, and attempting to counteract, Defendants' conduct. The amount of such economic damages is not presently ascertainable, but will be proven at trial.

## COUNT II

### (False Designation of Origin – 15 U.S.C. § 1125(a)(1)(A))

77. Diamond repeats and realleges the allegations set forth in Paragraphs 1 through 76 above as if set forth fully herein.

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

78.     Diamond owns the exclusive rights to the "Diamond Resorts" name, as well as all of the Diamond Marks listed above.  At no time did Diamond authorize Defendants to use any of Diamond's marks.

79.     Defendants have engaged in a campaign of telephonic advertisements in which they have falsely represented to Collection Members that the commercial rental programs they are attempting to get the Collection Members to enroll in are affiliated with Diamond, and, therefore, permissible.  These false representations have taken the form not only of unauthorized use of the Diamond Marks, but also claims to be affiliated with Diamond's equity sponsors or with exchange companies with which Diamond might do business, as well as more general suggestions that the solicitations are coming from an entity with insider knowledge of, and authority over, the Collection Member's Points.

80.     In addition, Defendants, in selling and facilitating occupancy of accommodations within the Resorts, have falsely held themselves out as authorized wholesale distributors of vacation stays at the Resorts.  They have done this through the use the Diamond Marks, as well as separate false promises and warranties they have made.

81.     Such false claims of affiliation with Diamond are not only likely to deceive and cause confusion among the targets of the deceptive sales communications, but actually have caused such confusion.  In particular, Collection Members have been deceived by Defendants' false representations into believing that the telephone solicitations they have received from Defendants are coming from Diamond itself, or else an entity affiliated with, or authorized to do business on behalf of, Diamond.  In addition, the consumers who have reserved stays at the Resorts through Defendants have been deceived by Defendants' false representations into believing that Defendants are authorized wholesale distributors of vacation stays at the Resorts.

82.     These false representations have been made in interstate commerce.

25

83.     Defendants' conduct has caused, and, if not enjoined by this Court, will continue to cause, irreparable harm to Diamond in that it is undermining Diamond's relationship to the Collection Members.

84.     Defendants' conduct has caused, and, if not stopped, will continue to cause, monetary injury to Diamond in the form of both the diversion of business from Diamond to Defendants, and the taking on of the costs of investigating, and attempting to counteract, Defendants' conduct.   The amount of such economic damages is not presently ascertainable, but will be proven at trial.

<u>COUNT III</u>

<u>(False Advertising – 15 U.S.C. § 1125(a)(1)(B))</u>

85.     Diamond repeats and realleges the allegations set forth in Paragraphs 1 through 84 above as if set forth fully herein.

86.     Defendants have engaged in a campaign of telephonic advertisements directed at Collection Members in which, in an effort both to extract payment from Collection Members and gain control of the Members' Points for commercial rental, Defendants are making a series of material misrepresentations to Collection Members.   In particular, Defendants are falsely representing (a) that they are affiliated with and/or acting on behalf of Diamond, (b) that the programs in which they are attempting to enroll Collection Members are permissible under the terms of those Members' agreements with Diamond and the governing documents for their Collection, and (c) that the Collection Member will receive significant monetary returns for surrendering control of their Points to Defendants.

87.     Defendants are likewise making a series of material misrepresentations in connection with promoting their rentals of Resort accommodations.   In particular, Defendants are false representing that they are authorized wholesale distributors of vacation stays at the Resorts and authorized to sell access to such Resorts.

88.     These false representations have been made in interstate commerce.

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

89.     These false representations have a tendency to deceive, and have, in fact, deceived, both Collection Members and the customers to whom Defendants are selling and facilitating occupancy to accommodations within the Resorts.

90.     These false representations are material and are likely to influence, and have, in fact, influenced, purchasing decisions of both Collection Members and Defendants' customers.

91.     Defendants' conduct has caused, and, if not stopped, will continue to cause, irreparable harm to Diamond in that it is undermining Diamond's relationship to Collection Members and causing Diamond to lose control of its brand.

92.     Defendants' conduct has caused, and, if not stopped, will continue to cause, monetary injury to Diamond in the form of both the diversion of business from Diamond to Defendants, and the taking on of the costs of investigating, and attempting to counteract, Defendants' conduct.   The amount of such economic damages is not presently ascertainable, but will be proven at trial.

## <u>COUNT IV</u>

### <u>(Deceptive Trade Practices – Nev. Stat. §§ 598, 598A et seq.)</u>

93.     Diamond repeats and realleges the allegations set forth in Paragraphs 1 through 92 above as if set forth fully herein.

94.     Defendants have, and are, engaged in a series of deceptive practices designed to (a) acquire illicit control over Collection Members' Points, and (b) profit from selling and facilitating occupancy of accommodations within the Resorts.

95.     Those practices have involved (a) falsely claiming or implying affiliation with Diamond to Collection Members, (b) falsely representing to Collection Members that there are certain "problems" with their Collection accounts that Defendants are authorized to help them with, (c) falsely promising to Collection Members significant returns in exchange for providing an upfront fee for surrendering control of their Points, and (d) falsely representing to its customers that they are authorized wholesale distributors of vacation stays at the Resorts.

96.     Defendants' conduct constitutes engagement in "trade or commerce" as defined by Nev. Rev. Stat. § 598A.020.

97.     Defendants' conduct has caused, and, if not enjoined by this Court, will continue to cause, irreparable harm to Diamond in that it is undermining Diamond's relationship to Collections Members and causing Diamond to lose control of its brand.

98.     Defendants' conduct has caused, and, if not stopped, will continue to cause, monetary injury to Diamond in the form both of the diversion of business from Diamond to Defendants, and of the costs of investigating, and attempting to counteract, Defendants' conduct.   The amount of such economic damages is not presently ascertainable, but will be proven at trial.

<u>COUNT V</u>

<u>(Common Law Conversion)</u>

99.     Diamond repeats and realleges the allegations set forth in Paragraphs 1 through 98 above as if set forth fully herein.

100.     Diamond, through its affiliates, holds the exclusive right to engage in the commercial rental of Resort accommodations through the use of Points under the governing documents for the Collections.

101.     Defendants have been, without authorization, selling and facilitating occupancy of accommodations within the Resorts.   They have been doing so through obtaining unauthorized access to Diamond's online reservations system for Collection Members, and making reservations for their customers at Resorts via the accounts of Collection Members and via the Member Portal Accounts.

102.     Defendants have engaged in such conduct with malice, that is, with knowledge that they lacked any authority to access Diamond's online reservations system or to sell and facilitate access to accommodations within the Resorts and, thus, full awareness that such conduct was contrary to Diamond's ownership rights.

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

28

103.   Defendants' conduct has caused, and, if not stopped, will continue to cause, monetary injury to Diamond in the form of the diversion of rents from Diamond to Defendants.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter an Order against Defendants as follows:

1.   Preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees and attorneys, and all those in active concert or participation with them, from:

    a.   using any Diamond Marks, or otherwise engaging in any further advertising or promotion – whether in print, email, telephonically, on their websites, or otherwise – that *either* (a) suggests an affiliation with Diamond, *or* (b) suggests that any of Defendants is authorized as a wholesale distributor of vacation stays at the Resorts or has authority to facilitate or otherwise sell access to the Resorts;

    b.   holding themselves out as authorized depositories, managers, or renters of Points; and

    c.   using, or attempting to use, Collection Members' Points or Member Portal Accounts obtained through their schemes to sell and/or facilitate access to vacation stays at the Resorts;

2.   Awarding Diamond disgorgement of Defendants' profits;

3.   Awarding reasonable attorney's fees pursuant to 15 U.S.C. § 1117 and Nev. Rev. Stat. § 41.600;

4.   Awarding Diamond its costs in bringing the action;

5.   Awarding Diamond punitive damages; and

Ballard Spahr LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

6.     Awarding any further relief that this Court deems just and proper.

Dated: February 6, 2019.

BALLARD SPAHR LLP


By:   _/s/ Abran E. Vigil_
Abran E. Vigil
Nevada Bar No. 7548
1980 Festival Plaza Drive, Suite 900
Las Vegas, Nevada  89135
Telephone:  (702) 471-7000
Facsimile:  (702) 471-7070

Paul J. Safier
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiffs*